Good morning. May it please the Court, I'm Ryan Anderson and I'm here on behalf of appellant Robert Ingrum. This case boils down to Linda Tatum's claim of approval under Section 2501 for purposes of the six-year limitations. And really what it comes down to, the case law says it's very consistent that a claim approves when the plaintiff or when the events have occurred which fix the liability of the government and the plaintiff knew or should have known of the existence of such events. That much is very consistent throughout the case law. Where it gets difficult is the should have known the problem and the plaintiff calls it a separate prong. Reasonable diligence is something that the court of federal claims used. Do you agree that the should have known standard is fairly encompassed or encapsulated by the two-part test of either concealment by the defendant or inherently unknowable information by the plaintiff? No. I don't think it is. It's a fairly standard formulation but you challenge it. Absolutely standard. You see it sprinkled throughout but in most of the case law, in much of the case law, you then see it boiled down to this reasonable, diligent landowner. And I think we would be better served by just going to Because I think reasonable diligence is the standard. The problem I think with fraudulent concealment really isn't a should have known because it's more of a the party would have known but for the facts were concealed. Do you think it matters that Mr. Ingram lived in Boston as opposed to living let's say in Presidio? I think it can. If you're looking at the diligence, I think it can. And here's where I think it ties in. Mr. Ingram is 15 hours removed from his property. And I say in the brief I've got a typo where I say 10. The record is very clear. It's 15. Not that that really matters. But I do think that diligence or reasonableness could change what is required depending on whether you are next door to the property. So the statute of limitations would depend on whether he lived in Boston or Boston or Burkina Faso. I think that the should have known requirement could hinge on that or could be affected. Or if he were averse to travel. Well that may be, again it's an objective standard. Objective reasonableness with respect to the particular situation of the plaintiff which is what I hear you saying. That's why I say if he's averse to travel that may be a condition of the plaintiff. He can't travel. It's an interesting balance because we call it an objective standard but in reality we're looking at what is, we've sort of analogous to a standard of care that you see in a medical malpractice case that there are certain factors that ought to be considered. And then when we're doing this fact intensive investigation, which it is necessarily fact intensive so it is going to tie back to the individual situation, we are going to have to apply that situation to the objective standards. The site of the taking was 50, 100 feet from the road, very easily viewable according to the record. Why doesn't that impeach somewhat your argument that this was not reasonably knowable? Because you've got to get to that point. And therein lies part of the problem in this particular case. When the government goes in and repairs a road and renders that road unusable for much of the year, and it's occasionally usable, I'm not saying that ever. But right, I agree, it is a long period of time. And the evidence shows that Mr. Ingram on several occasions traveled down there and could not get into the lane. And I do think in the abstract you could look at that and you could say, well, he should have done it some way. He should have done what he eventually did once someone had told him, hey, did you see what they did to your hillside? He still wouldn't drive in that way. In fact, the day that he was told that, he had tried to access his property. He couldn't get in there. Then he was told that, so he later goes back. And he has to hike in a mile and a half over very difficult terrain to get there. How far is it? Okay, I was going to say, but I think what's important there is at that point, once he had been told, you know, if someone damaged your land, he had a reasonably diligent landowner would go further, would do more than try to drive onto his land. Up until that point in time, he had this incredibly remote piece of land that he tried to access, he couldn't access, and he had no reason to believe. Well, no reason to believe. He knew that the government was working on his road. I mean, I have a house in North Carolina. It's a five-hour drive. If I hire a contractor to do work on that house, you know, I follow up. I go back and I look. I don't trust that he did everything perfectly without any fault. I don't wait six years and then go take a look. Why wouldn't that put him on notice? He knew they were going to go onto his land to repair the road. How else did he think they were going to repair the road? In that area of the country, it doesn't seem to be reasonable to expect they were bringing dump trucks full of dirt in. He's got thousands and thousands of acres sitting there full of dirt. So why doesn't all of that put him on notice? Because previously, when the government had come in to repair the road, they had filled out the right of entry permit that specifically allowed them to take materials from the land. That was not filled out in this situation, and the government agrees that they didn't have a right to take it. We're not arguing about whether or not there would have been a meritorious claim had you filed within the requisite time. We're talking about whether or not he should have known. I mean, wouldn't a prudent, normal landowner, when work is done on their home, verify at some point within six years that the work was done properly and didn't do harm to their land? I don't think that. I think that Mr. Ingram should be permitted to rely on the limited right of entry that he gave. To compare it to your contractor payment, you're talking about looking at the contractor's actual work. In this situation, Mr. Ingram didn't sue for the shoddy road construction work that he knew was shoddy. Actually, most of the time when contractors come to my house to fix something, they actually fix the thing right, they just mess something else up along the way. I think that's pretty much a common occurrence. So I'm usually, when they're moving a new fridge in, looking at the stairwell for nicks in the walls. I'm not worried that the fridge isn't going to work. But that's inherent in getting that refrigerator in. And while I agree with you that the government it would put quite a burden on the government to haul materials in. And that's, I mean, it's reasonable to infer that that's exactly why they did not, why they cut up the hill. They had done that before he bought the land, if I say that, if I'm not mistaken. They had previously worked on the road and they had taken fill from the barricade. Yes. And he knew that. Yeah, I think so. It would be very surprising to me, at least, that you wouldn't have at least expected that there was a pretty good chance that they would do the same, absent some strict direction to the contrary, which isn't a threat. But in that, in that. The fact doesn't indicate that he told them, do not take drag from the road. In the prior example that you're talking about, the government has specifically been given permission to do that. And so I think there, there's a reason. Here, they weren't given permission to do that. The form wasn't filled out either way. I mean, he could have circled do not and he didn't. True, it wasn't circled to say do, but there certainly wasn't any unambiguous prohibition such that, since what we're talking about is divorce, this is not whether something was done wrong, but whether the time should be suspended for a court. It would seem to me that based on the record materials that we have, he was at least on inquiry as to whether something would have been done at the borrow pit as it was done in the repair that was done the year before he purchased the property in the same way. But, I mean, both parties agree they didn't have a right to take the property. I'm not going to the merits, but both of them interpret that non-filled out part of the form to mean the exact same thing, and that is they don't have permission to do it. So absent some indication, I mean, if the government violated that and then told them, hey, we did this, we need permission, there might be something that would give him cause to do it, to go investigate further and undertake it, just to undertake the arduous investigation task, and that's what I think is the difference here is something's got to put the landowner on notice. But this road only crosses two and three quarter miles of his property, right? Yes. Why isn't it reasonable to impose on the landowner a duty to inspect at least that little amount of his property, particularly when he does know that it's under construction? If he tried to. He tried to enter the road and he couldn't, and so his option, and I'm into my rebuttal which is exactly what he did once he had been told what had happened for this alternative route. One thing I want to clarify is the government in their brief says, ah, this is a road, he could have gone by car. If the court looks at page 163 of the appendix, which shows the map, that road ends at Candelaria. The paved portion of the road ends at Candelaria. Right. Then it continues as a dirt road for all the way to Chisborough, right? Exactly. But this is not a dirt road, like a smooth, you crawl along at five to ten miles an hour. How many miles is it from Candelaria to the beginning of this property? I thought about four miles. I think it's about four miles. And a lot of that is traversable. The only place you run into a problem, I guess, is where the creek, the washout comes through, the bog, I think it's called. The bog. Right. And that's right on the edge of his property, right? That is right inside of his property. Okay, so from the bog, you could park right next to the bog. You can get to the bog, no problem. The bog is the problem. So you walk, what, a mile and a half into his property before you get to the borrow pit. Right. So really, access was paved roads all the way to four miles from his property, at which point you have four miles of pretty good road, followed by, at most, even in bad weather, a mile and a half hike. Correct. That doesn't seem to define inaccessibility in my sense of it. I think once you get to that point, are you going to get out and hike this rough terrain, or are you going to turn around and wait until the road becomes passive? When you have no reason to suspect that the government, I mean, I guess I just disagree, and maybe this is something the court is going to hold and explain. But I've got to disagree if the idea is, look, if the government goes on your property, even under a limited right of entry, then you have to suspect that they probably damaged your property. If that's the holding. Well, let me ask you another question. Do you think that the limitations period accrued in 04 when Lupe informed Mr. Ingram of what had happened on the land, or was it in 05 when Ingram went on to the property? It's a couple of months difference. It's a year's difference. Well, no, I mean, actually it's November or December of 04, and then February of 05. I thought it was early 04 when he ran into Lupe. No, the record. Okay, it doesn't matter. That's okay. I've only got a minute and a half left. Can I reserve that for rebuttal, or are there more questions you'd like? Okay, thank you. We'll restore Mr. Ingram's rebuttal time, and if you'd give an extra four minutes to Mr. Stockland if he needs to use it. Thank you. May it please the Court, my name is Robert Stockland, and I'm here on behalf of the United States. We ask this Court to affirm the trial court's dismissal of Mr. Ingram's planning as barred by Section 2501. The sole argument raised by Mr. Ingram in his brief was that this claim should not have accrued when it occurred because it was inherently unknowable. Did the Court of Federal Claims correctly deny that? Well, he's challenging, in fact, his argument, the inherently unknowable standard, or at least its application beyond to the extent that it's inconsistent with a reasonable diligence standard. I think at this point he is, Your Honor. I would say, though, that under the precedent of this Court in Martinez, there are simply two ways of articulating the same standard. The Court in Martinez discussed the need that normally it accrues when all events occur, but that it doesn't accrue when it is inherently unknowable or the government concealed it. And then it goes on to say, well, that means that a person, the claim accrues when a person knows or reasonably should have known that the claim accrued. I read Martinez to suggest that. Why can't there be some inference of concealment here when they did take it and didn't notify him that they're taking it in the first place? And in the second place, they know that if accessible, it's accessible through difficulty. Well, Your Honor, first, the plaintiff didn't allege concealment. But I would go on to say that in this case, they did ask for permission to go onto the property. He gave that permission. He failed to fill out this form on whether or not he could do it. Usually when you're going to take something off the property, you ask permission. I believe that's the case, Your Honor. And that wasn't done. So that kind of forms a cloud over the whole affair. Your Honor, I just— And then you know that it's going to be difficult for him to discover it. Why isn't that getting close to concealment? I don't believe there's any sign of concealment. Because here, first, the taking itself is readily visible. It's a 20-foot high, 35,000-square-foot pit. If they'd meant to conceal it, they wouldn't have put it readily visible from the road. Moreover, I think concealment is an after-the-fact kind of analysis. It goes to whether or not the government has taken any kind of proactive efforts to hide it. Here, at best—or here, a mistake may have been made. But that doesn't suggest the government took any steps to conceal it further. When he contacted the U.S. Border Patrol, which continued to use the road throughout this time period, and asked, is it passable or not, more often than not, the Border Patrol found it passable, and they informed him when it was passable. That's being reasonably helpful. That's helping Mr. Ingram access his property. That's the opposite of concealment, Your Honor. I'd also say that the right of entry itself includes a comment that the government would be held responsible for damages. And I think that reflects the reality that construction can involve damages. It can result in mistakes. Even the government makes mistakes. And so the right of entry put him on notice that damages might result from this construction. And a reasonable inquiry following up on that would be for, at a minimum, the plaintiff to have gone to his property to walk or drive along his road, observing to see any damages. And he concedes that if he had done that at any point, he would have seen this pit. So a reasonable person should have known of it. And I don't believe there's any sign that the government took any steps to conceal it. I'd say that even assuming that the government had, in some way, made it more difficult to access it, or had, in some way, he had misread the government's actions, this Court has never suggested that would amount to concealment. I'd like to go on to say that this is an open and notorious case. I mean, it's a 20-foot high, 35,000-square-foot building from the hillside. It's readily visible. In Fulcher, the Fourth Circuit held that a property owner is expected to know about what happens on his property, lest the statute of limitations run indefinitely. This Court has repeatedly held that this is an objective standard in Fellini, in Coastal Petroleum, and M. Martinez suggests that. But what is the—whenever you have an objective standard, it's objective vis-à-vis what starting point? Objective for somebody that lives in Candelaria? Objective for somebody that lives in Presidio, a few miles away? Objective for somebody that lives in Austin, or what? I mean, there may be different levels. Or Burkina Faso. Or Burkina Faso. What is—what are we—are we talking about objective with respect to the reasonableness of the inquiry done by this individual? No. I don't believe the Court has ever tried to inquire into— Then what would you say is—should we be looking at? Would it be—you would think somebody lives in Candelaria, it would be reasonable for them to be out there pretty quickly. Well, I think in the context of real property, we expect people to take efforts to know about their property. And if they invest in remote property from them, they can always hire an agent to observe it. They could ask their neighbor to go observe it. We ask them to take some steps. We expect people, when they have a valuable property interest, to take some steps to remain aware about what has occurred on their property interest. So I don't think we need to be overly concerned about any individual living far or close to his property. Moreover, this Court's never drawn those types of lines. It's always simply asked, was this discoverable? Would a person who was on notice that something might happen, as he was here, have gone and taken steps that would have led to the discovery?  Your position would seem to be that it's discoverable as long as it would be possible for anyone to discover it, even if there were no road toward the bar. This were way up in the hills, in a place that it could only be found if you flew over, you might say. Well, you could tell us the Court of Federal Claims actually applied that standard. They said the damage wasn't readily visible. The property was remote. It was only accessible by helicopter overflight or by driving and hiking into the property. And yet they still held that the property owner was on notice. He was on inquiry that he should have discovered this taking. So I think in that case, it still is reasonably discoverable. But that isn't this case. This is a far more straightforward case, where when someone knows that the government is going beyond their property and engaging in the type of activity that might result in injury, they're required to at least do the kind of inquiry expected under those circumstances. So I think that… Inquiry expected under those circumstances. Now, what do you mean by that? I guess I'm… I can assure you that flying over at a very low altitude, let's say over a 3,300-acre… It's a lot of territory. A 3,300-acre ranch to see if there's been any disturbance of the property is not something that everyone would be likely to do. You're not suggesting that any disturbance, even miles from the road, would be something that would fall within the realm of what people would normally be expected to do by way of checking up on the property. Well, I think it's a question that has to be answered based on the facts of each case. I hesitate to speculate. In this case, I think it would have been revealed. Different cases pose different burdens. And what is reasonably expected is that someone remain just knowledgeable about the property and take steps to know about what's occurring on it. It seems to me, counsel, that you're asking for a rule that is far broader than what you need to. So let me make sure I understand. Don't the facts of this case suggest that in the previous repair of the road, the government did so by removing sand, gravel, and dirt, and a reasonable person would not expect that necessarily in this construction effort to bring in dump trucks full even though the box wasn't checked on the floor? Yes, Your Honor. So it seems to me that you have a more narrow factual circumstance here. You don't need to argue for the you always have the duty to look in every case kind of standard. I think that's true, Your Honor. And I wouldn't attempt to articulate what exactly a reasonable person does in every circumstance. And I'll try not to attempt to articulate it. I believe this court tries to formulate that question with things like the inherently unknowable standard and with things like, is it concealed? That's an attempt to see what would objectively a person wouldn't know. But it's certainly true that this case doesn't require the court to go that far. I believe the Court of Federal Claims did a very good job of laying out all the reasons that this plaintiff was on inquiry that he might suffer damages. They had been removed before that he knew they were doing construction. He knew damages might occur and that if he had taken any steps to discover it, he would have discovered it. Do you know, by any chance, if this wasn't for you, but I'll ask anyway, if in adverse possession law the requirement that the possession of the adverse party has to be open, notorious, and hostile has within it the notion that the other party is not required to investigate the open, notorious, and hostile possession if it is not in a place where he would reasonably be expected to visit? I'm not sure how that plays out in Texas law, Your Honor, although I did do some research into this. And my understanding is that there isn't an inquiry into whether that person, the person whose property it once was, did research the question of whether it was open and notorious generally, whether it was the type of thing that someone would have discovered. Where I'm going, I think that in Texas the adverse possession is 10 years for this kind of property. So if there isn't a suspension of the 10-year period in Texas law for open, notorious, and hostile possession, then presumably in the passage of two more years somebody could have just set up a shop out there marked off 160 acres. And Mr. Hewitt would be out of luck, right? I believe that's right, Your Honor. That isn't this case, but I believe that's right. I understand. It seems curious because his theory is that the limitations period didn't begin until either 04 or 05, which would make for a total of 11 years, which means that that would be longer than the adverse possession limitations period in Texas. That does appear to be his theory, and I don't believe that could possibly be correct, Your Honor. And I think that is another problem with his argument. However, it's also the case that Section 2501, it's further also problematic because this court has repeatedly held that it's not an issue of the practical burdens that face a unique plaintiff. I mean, in Hopland Band of Home of Indians, this court specifically faced plaintiffs that said that the government's mistakes and inactions had made it more difficult for them to bring their claim. But the court said, well, you could have brought it. And the six-year period reflects a congressional determination about what is a reasonable period of time for someone to overcome practical burdens in discovering. So I think that is another problem with the plaintiff's argument. But I think that at the end of the day, the six-year period is the federal period, and it runs from the moment that it should have been discovered by someone. And in this case, he was awning for it. He knew that there was construction and that injury might occur. Finally, I would just like to say that I think this follows well within the rules set out by the Court of Claims in Coastal Petroleum, where once a person is on notice that there would be an injury to their property, or there might be if the government is doing a project on the property, they have some responsibility to go follow up. So I think that I would ask this court to affirm, because it falls well within the circuit of this precedent. If there are any further questions. Thank you, Mr. Strachman. Thank you very much. Mr. Anderson, you have five minutes. Mr. Anderson, doesn't your position really eliminate the statute of limitations for difficult-to-access property? If Lev Lupe hadn't shown up for 20 years, or 30 years, you'd essentially say there's no statute of limitations until it's discovered, right? Not necessarily. Not necessarily. And try and figure out what kind of objectives. What is your rule? Here's the rule that I would propose. I would propose that the should-have-known, the reasonable diligence test depends on, first, the events occur of which the property owner is deemed to have notice, such as some sort of public record, property record file. And that's the Catullus case. The big difference in Catullus is they had a condemnation proceeding back in 1952. Of course, the difficulty you might have there is that this had occurred earlier. And you were aware that there was going to be construction on your property. So there is some form of notice. Absolutely. Go ahead with what you think your rule is. Okay. So I think you first look if there's deemed notice. And that would put you on inquiry. I think the second thing is you look at are there events that occur that would raise some suspicion. And I think that gets to a big question. You see, whenever there's difficult-to-access property, you're not going to have those circumstances. It's not going to be easy for the public to know what's going on there. It is going to be more difficult. And therefore, no statute of limitations until Lupe shows up. Right? 20, 30, 50 years later. Well, I think that all goes into the calculus, if you will, of what a reasonably diligent landowner is required to do. Kind of touching on Judge Bryson's question regarding adverse possession. And it's been a few years since I've done an adverse possession appeal. I think remote land, and correct me if you've looked at this figure, I think it's 25 years for really remote land. I could be wrong. When I found out, I admittedly had a quick look. So it's 10 years. Because I know there's 10, 15, 25. For different kinds of property. But 10 seems to be the longest. But that said, I did do a thorough research on remote land. But I think what's important there, adverse possession also has a fundamentally different policy behind it. Adverse possession, especially in Texas, I don't know other areas that this circuit deals with. But in Texas, it is encouraging the productive use of land. So if there's land that's essentially abandoned and someone's using it for productive means, since we've got so much land down there, if someone's going to use it, we want to reward them and protect their use of it. So that's why they will cut off claims there. But it's got to be open and notorious in a way. But does it also have to be undiscoverable? Does it have to be discoverable? Is there an exception, in other words, for undiscoverable? If Lupe, for example, in 2004, instead of walking into Candelaria and telling Mr. England about this, had set up shop on the land and had been there since 99, would he have had an adverse possession right regardless of the difficulty Mr. England had in reaching the property? If he continually occupied the land. Continually adverse than possible. Right. And what they usually require on these rural areas is you've got to fence it in or you've got to build it. He didn't know that, but the land was equally inaccessible to Mr. England. Would Mr. England have lost his property? Yes. You could lose an adverse possession claim on that. And I think where the distinction would have to be there is it is just a fundamentally different policy underlying that. But back to this standard of care. These events that occur, and this is something where I guess just factually, based on your question, there just may be disagreement because I think an event occurs and you look at, they previously took materials from the property. But I would say that it is absolutely distinguishable where they specifically had permission to do so. And here they didn't. And they both agreed they didn't have permission to do it. And I think that makes a big difference. I think the landowner ought to be able to rely on the fact that the government didn't get permission to do it. Now, he would have been in time, I guess, if he had sued and would be told about the problem, or even when he later went on to the property in 05. Had he sued immediately, yes, he would have been within the six years. And I think that's a difficult fact. I agree. I would just ask the court, and I'm over time, so I will wrap it up in two seconds or a little longer. But I think that the standard ought to be clarified. I think this reasonable diligence is the proper standard. I think the court can do it. And I think under these facts, I think Mr. Ingram was reasonably diligent because he tried to get onto the land. And once he was given notice of his permission. Thank you very much.